| 7 | 509 |
| 57 | 178 |

THOMAS BLACK and JOHN BLACK *v.* ASHER MORSE, AARON R. COMBS and others.

T. gave two mortgages, one to M. and the other to R. of a tract of land of 18 acres; and afterwards conveyed to A. half of the tract, and thereupon A. gave to T. an obligation that he would pay, as part of the purchase money for the said nine acres, the said two mortgages to M. and R. A. afterwards gave to B. a bond, and, to secure it, a mortgage on the nine acres he had bought of T., as additional security for money for which B. held A.'s mortgage on other lands. T. afterwards conveyed the residue of the tract to C., with full covenants of warranty, and at the same time asssigned to C. the said obligation of A. to pay the two mortgages held by M. and R. M. filed a bill for the foreclosure of his mortgage; making R. a party defendant. B. was not made a defendant, he not having got his mortgage from A. when the bill was filed. A decree was obtained in that suit for the sale of the whole tract, to satisfy the mortgages of M. and R.; and a *fi. fa.* for sale was issued to the Sheriff. B. then filed his bill, stating, that the half remaining in T. after he had sold half to A. was sufficient to pay the mortgages to M. and R., and submitting that the half so remaining in T., and which was afterwards conveyed by T. to C., should be first sold; and prayed an injunction staying proceedings on the *fi. fa.* which had been issued. The injunction was allowed.

On answer and motion to dissolve the injunction, it was held that, as between C. and A., the half so conveyed to A. ought to be first sold, to pay the mortgages held by M. and R.; and that the equity was the same between C. and B., the mortgagee from A.

*Held,* that A. was not a competent witness to prove payment of his said obligation to T., though B. had released him from personal liability on his said bond to B. and agreed to rely only on the said motgage given by A. to B.

*Held,* that T., on being released by C. from his covenants in his deed to C., was a competent witness to prove that B. had notice, before he took his mortgage from A., that A. had given his obligation to T. to pay the mortgages held by M. and R.

Joseph I. Thompson executed, with his wife, two mortgages on a tract of land of 18 76-100 acres; one to Asher Morse for $400, dated June 7, 1837; the other to Richard Davis and Jos. Murphy for $500, dated May 19, 1838, which was afterwards assigned to Jos. F. Randolph; and afterwards, by deed dated May 28, 1842, executed by him and his wife, conveyed nine acres of the said tract to Simon Abrams. On this conveyance to Abrams he executed and delivered to Thompson a bond, dated June 1, 1842, in the penal sum of $1,800, conditioned "that he, Abrams, his heirs &c., should pay the said two mortgages on the whole tract.

On the 1st of April, 1843, Abrams executed to Thomas Black and John Black a bond conditioned for the payment of $865 28 ; and on the 20th July, 1843, executed to the said Blacks a mortgage on the nine acres so conveyed to him by Thompson, to secure the payment of the said bond ; which last mentioned mortgage was recorded July 21, 1843.

On the 3d of August, 1843, Thompson, with his wife, by deed of that date, conveyed the residue of the said tract of 18 76–100 acres to Aaron R. Combs, with full covenants of warranty ; and on the same day assigned to Aaron R. Combs the said bond of Abrams conditioned for the payment of the said two mortgages held by Morse and Randolph.

At the time this bond was assigned to Combs there was an indorsement on it, signed by Thompson, dated July 18, 1843, of the receipt of $130 on the said bond.

Morse filed his bill in this court for the foreclosure of his mortgage ; making Randolph a party defendant. The subpenas on this bill were returned to the July term, 1843. The Blacks were not made defendants in that suit. They did not get their mortgage till July 20, 1843 ; probably after the subpenas were issued in the cause.

In January term, 1844, a decree in that suit was obtained for the sale of the whole tract of 18 76-100th acres, to satisfy Morse $442 62 and costs, and to satisfy Randolph $550 62 and costs. And a *fi. fa.* for sale was issued to the sheriff.

In this state of things the Messrs. Black exhibited their bill, filed May 15, 1844, stating that they had no knowledge of the proceedings in the before mentioned suit until the premises were advertised for sale ; that they are satisfied that that part of the premises covered by the Morse and Randolph mortgages which Thompson retained, after the conveyance of the nine acres to Abrams, are sufficient to satisfy the Morse and Randolph mortgages ; and submit that the said residue of the said premises remaining in Thompson should be first sold ; that they are informed and believe that Thompson intends to direct the sheriff to sell first the nine acres so sold by him to Abrams, and by Abrams mortgaged as aforesaid to them ; and that in such case they must lose their debt, as Abrams, since the execution and delivery of

the said mortgage to them, has become insolvent, and has no other property out of which they can realize the amount due them on their said mortgage.

The bill prays an injunction restraining the sale of the said nine acres; and for such other and further relief &c.

The injunction was allowed.

Answers were put in and proofs taken; and the cause was submitted on the pleadings and proofs and written briefs.

*J. L. N. Stratton* for complainants.

*P. Vredenbergh* for Combs.

THE CHANCELLOR. On the purchase by Abrams of the nine acres of the tract covered by the Morse and Randolph mortgages, if he had paid the consideration in full, an equity would have arisen in his favor requiring that the residue of the tract remaining in Thompson should be first sold for or towards the satisfaction of those mortgages:

He did not pay the consideration in full; $900 of it, an amount equal to what was then due on the said two mortgages, was retained by him; and he gave Thompson his bond conditioned that he would pay that sum by paying those mortgages. No equity, heretofore, arose in his favor, either against Thompson or his grantee, to have the land which remained in Thompson first sold.

An effort has been made on the part of the complainants to show that Abrams afterwards paid to Thompson the $900. From the proofs in the cause in reference to this matter, even if Abrams's testimony were competent, I am satisfied that, with the exception the $130 indorsed in the said bond, it never was paid.

Have the Blacks, the complainants in this case, any better equity against Thompson than Abrams had? It is said that the bond given by Abrams to Thompson is no lien on the nine acres. The question is not whether this bond is a lien on the nine acres; but whether Abrams's giving a mortgage to the Messrs. Black

on the nine acres gave them any better equity than Abrams had; whether it gives them the equity which Abrams would have had if he had paid to Thompson the whole consideration money. Had the Messrs. Black a right to presume that Abrams had paid the full consideration money, and to repose on the equity which in that case would have arisen in favor of Abrams. The Messrs. Black are chargeable with knowledge of the Morse and Randolph mortgages, covering the whole tract. They were recorded. Was the fact that Thompson had given a deed for nine acres of it to Abrams sufficient ground for them to assume that Abrams had paid Thompson the full consideration for the nine acres, knowing, as he, Abrams, did, [for he too was chargeable with that knowledge,] that there were two mortgages covering the whole tract? Had they a right to assume, from the mere fact of a deed for the nine acres, that Abrams had paid the full consideration, and to omit inquire of Abrams or Thompson how it was? If they inquired, and ascertained how it was, and acted, in taking their mortgage, on the idea that the bond given by Abrams to Thompson was not a lien, they acted on mistaken ground; for the question is not, whether the bond was a lien, but whether Abrams, having assumed the payment of the Morse and Randolph mortgages, had any equity to have the land retained by Thompson first sold.

The only ground the Messrs. Black can take is that, seeing that Thompson had made a deed to Abrams for the nine acres, they were deceived into the belief that Abrams had paid the full consideration money; and that, therefore, though Abrams had not paid the full consideration, and had, himself, no equity against Thompson, yet that they have. This will not do. With the knowledge of the existence of the mortgages to Morse and Randolph of the whole property, and the knowledge which every man must be presumed to have of the different modes of dealing when land which is subject to mortgage is conveyed by the mortgagor, they had no right to omit inquiry and rely on the face of the deed from Thompson to Abrams as proving payment of the consideration. No man would have advanced money on a mortgage from Abrams on the nine acres under such circumstances. And they did not advance money. They merely took this mortgage from

Abrams as additional security for money to secure which they had a mortgage on Abrams's mill property. I am of opinion that, even without the evidence of notice of the bond given by Abrams to Thompson, the complainants have no better equity against Thompson than Abrams had.

But Thompson swears, that he informed one of the Blacks, before they took their mortgage from Abrams, that he had a bond against Abrams by which the part he had sold to Abrams was bound to pay the mortgages that were against the whole property; that he named the mortgages, and who held them, and the amount of them. It was said in argument, on the part of the complainants, that this was not a true description of the bond— that the bond did not bind the land conveyed to Abrams, but bound Abrams to pay the mortgages. There is nothing in this. The effect is the same. Abrams was bound by the bond to pay the mortgages; the mortgages were existing in the hands of third persons, and were liens on the whole tract. Abrams, by his bond to Thompson, became bound to pay them. As between him and Thompson he had no equity that the land retained by Thompson should pay them; but the lien thereof, as between him and the mortgages, remained on the whole tract; and as between him and Thompson was, in equity, wholly on the part he had bought.

I see no objection to Thompson's competency, if his evidence was necessary. He was released from his covenants in his deed to Combs before he was sworn. He has, then, conveyed to Combs without covenants, and assigned to Combs the bond of Abrams by which Abrams agreed to pay the mortgages, and by the effect of which Abrams's nine acres would in equity be directed to be first sold. As between Abrams and Combs, I do not see that Thompson has any interest. The fact that his bonds accompany the mortgages to Morse and Randolph makes no difference in this respect. The lands are all still bound by those mortgages : the question is, simply, which land shall be sold first, the land conveyed to Abrams or that conveyed to Combs.

Is Abrams a competent witness on this question? The complainants have released him from personal liability on the bond he gave them, and have agreed to rely on the land only, that is,

the nine acres mortgaged by Abrams to them. Is not Abrams still interested in having Combs's land first sold to pay the Morse and Randolph mortgages? If those mortgages are satisfied out of Combs's land, Abrams has the nine acres to pay his own debt to the complainants and to relieve, to the extent of their value, the mortgage on his mills. It is said his interest is balanced: that if Combs's land is sold to pay the Morse and Randolph mortgages, he would be liable to Combs on the bond he gave Thompson and which Thompson assigned to Combs. But this is a suit between the Messrs. Black, as assignees of Abrams, against Combs, for the purpose of deciding the question whether the part conveyed to Abrams or the part conveyed to Combs shall be first sold; and this depends on the question whether Abrams paid to Thompson the amount of that bond. If this court, in a suit in which Combs is a party, decide that Abrams paid to Thompson the amount of that bond, and thereupon decree Comsb's that land be first sold, could Combs maintain an action on the bond? Again, if it be decreed here that the land conveyed to Abrams be first sold, it will be liable for the costs of the foreclosure, and for interest upon the interest of the two mortgages and on the costs, from the time of the decree; whereas if it be decreed that the land conveyed to Combs be first sold, he has but to pay the amount due on the bond assigned to Combs, and avoid costs, or be subject to a much less amount of costs if he suffers a prosecution on that bond. It seems to me that it cannot be said that his interest is balanced; and I am inclined to think he is not a competent witness. But, if he is, the payment of the bond, as I have said before, is not established.

As to the $130 indorsed on the bond as received by Thompson from Abrams, it was paid, and the payment thereof was indorsed on the bond, before the assignment of the bond by Thompson to Combs. If Thompson, notwithstanding the condition of Abrams's bond to him required Abrams to pay the mortgages, had received from Abrams the $900 mentioned in the condition of the bond, and thus received, himself, the full consideration for the nine acres, an equity would have arisen, between Abrams and Thompson, in favor of Abrams, to have the lands remaining in Thompson first sold for the satisfaction of the two mortgages. His receiv-

ing part of it raises an equity to that extent. Thompson, on receiving part of the money, should have applied that part towards the payment of the mortgages. If he did not do so, the land retained by him should be first liable for it. And Combs, having notice of that payment, by the indorsement on the bond, is subject to the same equity.

It will be decreed that the nine acres be first sold, to raise a sum equal to the amount due on the bond given by Abrams to Thompson; and that for the residue the land of Combs is first liable.

Order accordingly.